**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0809-17T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

CHRISTOPHER KIM,

    Defendant-Respondent.

_____

Submitted May 7, 2018 – Decided August 21, 2018

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Passaic County, Indictment
Nos. 16-07-0591 and 17-02-0115.

Camelia M. Valdes, Passaic County
Prosecutor, attorney for appellant (Tom
Dominic Osadnik, Assistant Prosecutor, on
the brief).

Evan F. Nappen, attorney for respondent (Ali
Homayouni, on the brief).

PER CURIAM

    The State appeals on leave granted from a September 7, 2017

order dismissing one count of a superseding indictment charging

defendant Christopher Kim with second-degree unlawful possession

of a handgun, N.J.S.A. 2C:39-5(b)(1).[1]  Because our review of the record convinces us the indictment was not "manifestly deficient or palpably defective," State v. Hogan, 144 N.J. 216, 229 (1996), we reverse.

The essential facts are easily summarized.  In the course of investigating a bar fight in Clifton, police came to suspect defendant had punched one of the victims in the head while wearing brass knuckles.  Four days after the fight, police obtained an address for defendant and went to speak to him.  When they arrived at about nine p.m., they saw defendant leaving by a side door.  Defendant was willing to speak to the detectives, and they conversed in the "house driveway area."

---

[1]  N.J.S.A. 2C:39-5(b) provides:

> Handguns.  (1) Any person who knowingly has in his possession any handgun, including any antique handgun, without first having obtained a permit to carry the same as provided in N.J.S.A. 2C:58-4, is guilty of a crime of the second degree.  (2) If the handgun is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person it is a crime of the third degree.

A-0809-17T1

Defendant acknowledged his involvement in the fight and admitted he punched one of the victims in the head. In the course of their conversation, the detectives noticed a folding knife protruding from one of defendant's front pockets. Defendant handed over the knife, actually brass knuckles with a fold out knife feature, at their request. Noticing something odd about the way he did so, one of the detectives asked whether "he had anything else on him." Defendant replied, "[y]eah, I have a piece." The detectives relieved defendant of a loaded .25 caliber semi-automatic pistol and arrested him after he advised them the gun was not registered to him, and he did not have a carry permit.

At police headquarters, following administration of Miranda[2] warnings, defendant told the detectives he got the gun at a motorcycle club event in Newark a few weeks before, for free. When asked how often he carried it, defendant claimed that evening was the first time. Defendant told the detectives he was going to "North Bergen" and was carrying the gun because of a prior stabbing and shooting that had occurred there.

A Passaic County grand jury indicted defendant on multiple charges, including unlawful possession of the pistol. The trial

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0809-17T1

court granted defendant's motion to dismiss the gun charge based on its view that the State failed to instruct the grand jury regarding the "possible exculpatory defense" contained in N.J.S.A. 2C:39-6(e),[3] the exemption for possessing a weapon in one's home or place of business.

The State obtained a superseding indictment, which also included the charge of unlawful possession of the pistol, after instructing the grand jury on the exemption in subsection (e). Defendant again moved to dismiss that charge of the indictment, this time because the State had also instructed the grand jury

---

[3]   Subsection (e) provides:

> Nothing in subsections b., c., and d. of
> N.J.S.A. 2C:39-5 shall be construed to
> prevent a person keeping or carrying about
> his place of business, residence, premises
> or other land owned or possessed by him, any
> firearm, or from carrying the same, in the
> manner specified in subsection g. of this
> section, from any place of purchase to his
> residence or place of business, between his
> dwelling and his place of business, between
> one place of business or residence and
> another when moving, or between his dwelling
> or place of business and place where the
> firearms are repaired, for the purpose of
> repair.  For the purposes of this section, a
> place of business shall be deemed to be a
> fixed location.
>
> [N.J.S.A. 2C:39-6(e).]

on the terms of the exemption contained in N.J.S.A. 2C:39-6(g),[4] the provision dictating how a gun being transported pursuant to the exemption in subsection (e) is to be secured for travel. The trial court dismissed the charge in the superseding indictment, finding the State's inclusion of an instruction on subsection (g) was improper.

In its opinion, the court wrote "[t]he main issue in this case is the language of N.J.S.A. 2C:39-6(e) and in particular what that subsection permits a person to do with a handgun on their own premises." It determined "that the text of N.J.S.A. 2C:39-6(e) permits a person to carry a firearm on her own premises, and that once a person travels from her premises, restrictions apply to the method of transport." It thus viewed the central question to be "was the Defendant carrying the

---

[4] Subsection (g) provides:

> Any weapon being transported under paragraph (2) of subsection b., subsection e., or paragraph (1) or (3) of subsection f. of this section shall be carried unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which it is being transported, and in the course of travel shall include only deviations as are reasonably necessary under the circumstances.
>
> [N.J.S.A. 2C:39-6(g).]

handgun in question 'about his . . . residence' or, was he carrying the handgun between his dwelling and another place?"

The trial court, although acknowledging the Supreme Court in Morillo v. Torres, 222 N.J. 104, 120 (2015), deemed "[t]he phrase 'premises or other land owned or possessed by him' is not perfectly clear as to its application," concluded that "in order to avail [one]self of the right to carry 'any firearm' on his premises," under subsection (e), the "individual must have the legal right to possess those premises." Applying that interpretation of subsection (e) here, the court found "the Defendant was in lawful possession of the property at which he was found to be in possession of the firearm."

Specifically, the court found defendant "rented the house, and Black's Law Dictionary defines rent as 'compensation or return of value given at stated times for the possession of lands and tenements corporeal.'" Based on its finding that defendant "was legally renting the house at which the police stopped him; and there is no indication that the Defendant did not have any possessory interest in the land immediately outside the side door of his home," the court found defendant "was on his premises when the police stopped him 'as he was exiting his side door.'" The court further found that because the detectives

> stopped the Defendant as he was in the act of exiting, there is no way to know whether the Defendant was permissibly exiting with the purpose to remain on his premises, or whether he was impermissibly attempting to leave his premises and transport the weapon in violation of subsection (g).

The court concluded defendant

> was on his premises and regardless of what he may have intended to do in the future, the statute does not permit the State to charge an individual for unlawful acts he may commit in the future. As stated above, under the Second Amendment, individuals are constitutionally permitted to keep handguns in their home, and in New Jersey, the Supreme Court has determined that within N.J.S.A. 2C:39-6(e) "premises" included those areas where an individual has lawful possession. See Heller, 554 U.S. at 577;[5] Morillo, 222 N.J. at 121. Therefore, the indictment for Count Eight, Unlawful Possession of a Firearm, should be dismissed.

We granted the State's motion for leave to appeal. The State contends the trial court erred in exercising its discretion to dismiss the gun charge of the indictment because the State presented evidence establishing probable cause that defendant committed the offense, and it was not improper to have instructed the grand jury on subsection (g). We agree.

The grand jury, having been instructed on the elements of unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), as well as

---

[5]  District of Columbia v. Heller, 554 U.S. 570, 577 (2008).

the exemption in N.J.S.A. 2C:39-6(e) for "keeping or carrying [a firearm] about [one's] place of business, residence, premises or other land owned or possessed by him" and the provisions of subsection (g) dictating how a gun being transported between those places is to be secured for travel, handed up the superseding indictment after hearing one of the detectives testify he went to an address in Ridgefield to speak to defendant, whom he found outside "about 6 feet from the house" with an unsecured gun. The detective testified that as he approached, defendant had "already exited the house, closed the door[,] and he was on his way." Although the detective testified he did a "Department of Motor Vehicle[s] search" for defendant and the prosecutor once referred to the house where defendant was arrested as "his" house, there was no testimony before the grand jury about whether the "house" was a single-family or multi-family dwelling or whether defendant owned or rented any part of it.

The Supreme Court has instructed a trial "court should dismiss an indictment '"only on the clearest and plainest ground," and only when the indictment is manifestly deficient or palpably defective.'" State v. Twiggs, __ N.J. __, __ (2018) (slip op. at 19-20) (quoting Hogan, 144 N.J. at 228-29). As the Court has recently summed it, "[i]n a nutshell, a court

8                                                          A-0809-17T1

examining a grand jury record should determine whether, 'viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it.'" State v. Feliciano, 224 N.J. 351, 380-81 (2016) (quoting State v. Morrison, 188 N.J. 2, 13 (2006)). Although we review a trial court's decision to dismiss an indictment only for abuse of discretion, we owe no deference to the court on questions of law, which we review de novo. Twiggs, __ N.J. at __ (slip op. at 20).

As the Supreme Court has noted, and the trial court recognized, the statutory language of subsection (e), the home-carry exemption, "leaves open to debate the intended reach of its exemption, and the scope of that exception remains unsettled by any interpretive decision by the courts." Morillo, 222 N.J. at 123 (analyzing the exemption in the context of a claim of qualified immunity). Writing for the Court in Morillo, Justice LaVecchia observed "[i]t is not entirely clear whether the exemption was intended to encompass, for example, common areas within a multi-unit dwelling, where one may have a right to be if one is residing in a unit in that dwelling, but which area technically is not possessed by that individual" or "whether it is intended to encompass, for example, carrying a weapon in the

open areas surrounding a private residence where one may be staying but which is not owned or possessed by the individual." Id. at 121.

After reviewing the cases addressing the exemption, Justice LaVecchia concluded:

> the overwhelming majority of New Jersey case law that has touched on the circumstances in which the statutory exemption is applicable supports the view that the statute permits gun owners to carry firearms, without a carry permit, inside their residences.  On the other hand, no case law suggests that the statute generally permits a gun owner to carry a firearm outside his or her residence on premises he or she neither owns nor possesses.[6]
>
> [Id. at 122-23.]

Because the issue in Morillo was qualified immunity, the Court expressly did not resolve the scope of subsection (e)'s home-carry exemption or "how to treat premises or land if not owned or possessed by the person carrying a registered gun."  Id. at 125.

Although the scope of the home-carry exemption obviously remains unsettled, what is clear after Morillo is that when a

---

[6]  Indeed, the Morillo Court observed we had implied the opposite in State v. Gomez, 246 N.J. Super. 209, 216 n.1 (App. Div. 1991) (noting the trial court's instruction correctly informed the jury that the defendant's possession of a gun outside his apartment would violate N.J.S.A. 2C:39-5(b)).  Morillo, 222 N.J. at 122-23.

defendant is charged with unlawful possession of a gun on premises outside his dwelling, as defendant was here, his entitlement to the home-carry exemption, and thus whether there is probable cause to charge him with the offense, may well turn on facts relating to his ownership or possessory interest in those premises. See id. at 121-25. Here, the trial court determined to dismiss the superseding indictment based on its finding that defendant "was in lawful possession of the property at which he was found to be in possession of the firearm" because he "rented the house."

As far as we can tell, however, there was no proof of that on this record. Nothing in the record on appeal suggests defendant presented facts on either of his motions to dismiss the indictment that he rented "the house" and had a possessory interest in the premises where he was arrested. The State insists that had the court considered this fact-intensive defense "at a later point in time, perhaps at the end of the State's case, as a motion for judgment of acquittal," it would have had additional facts to consider, including that the Ridgefield tax assessor lists the property as a two-family dwelling and the police report and motor vehicle records note defendant's address as limited to the first floor.

The law is clear that the State survives a motion to dismiss an indictment so long as it "presents 'some evidence establishing each element of the crime to make out a prima facie case.'" Feliciano, 224 N.J. at 380 (quoting State v. Saavedra, 222 N.J. 39, 57 (2015)). It is not obligated to present the grand jury with evidence sufficient to secure a conviction. Ibid. Here, there is no question but that the State presented a prima facie case of defendant's unlawful possession of the pistol in violation of N.J.S.A. 2C:39-5(b). The only issue is whether defendant's entitlement to the home-carry exemption of N.J.S.A. 2C:39-6(e) is so clearly established as to negate defendant's guilt, thus destroying probable cause for the unlawful possession charge. See Hogan, 144 N.J. at 236 (explaining "the grand jury cannot be denied access to evidence that is credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out a prima facie case against the accused").

The Court many years ago made clear the grand jury is "an accusatory and not an adjudicative body" and that "[c]redibility determinations and the resolution of factual disputes are reserved almost exclusively for the petit jury." Hogan, 144 N.J. at 235. The State is accordingly not obligated "generally to provide the grand jury with evidence on behalf of the

accused." Ibid. Instead, a prosecutor has only a limited duty "triggered only in the rare case in which the prosecutor is informed of evidence that both directly negates the guilt of the accused and is clearly exculpatory" to inform the grand jury of such evidence. Id. at 237.

"[A] prosecutor's obligation to instruct the grand jury on possible defenses is a corollary to his responsibility to present exculpatory evidence." Saavedra, 222 N.J. at 65 (quoting State v. John Hogan, 336 N.J. Super. 319, 341 (App. Div. 2001)). The Court has cautioned that "[a]scertaining the exculpatory value of evidence at such an early stage of the proceedings can be difficult, see, e.g., 2 [Wayne R.] LeFave & [Jerold H.] Israel, [Criminal Procedure] § 15.4(d), at 318 [(1984)], and courts should act with substantial caution before concluding that a prosecutor's decision in that regard was erroneous." Hogan, 144 N.J. at 238-39.

Applying those standards here, we are satisfied the trial court erred in dismissing the superseding indictment on the basis that defendant "was legally renting the house" and the absence of evidence indicating defendant "did not have any possessory interest in the land immediately outside the side door." Defendant does not assert he owned the property where he was arrested in possession of the pistol, and there is nothing

13

in the record before the grand jury or the record on appeal establishing his right to possess those premises.

The State presented a prima facie case of defendant's unlawful possession of the pistol. Leaving aside the questions regarding the scope of the home-carry exemption, see Morillo, 222 N.J. at 121-25, defendant's entitlement to the exemption depends on facts nowhere established on this record. As defendant has not alleged this is "the exceptional case in which [the] prosecutor's file includes not only evidence of guilt but also evidence negating guilt that is genuinely exculpatory," Hogan, 144 N.J. at 237, the State was under no obligation to provide the grand jury with evidence that might establish defendant's entitlement to the home-carry exemption in N.J.S.A. 2C:39-6(e), see Hogan, 144 N.J. at 235. Defendant remains free to pursue the defense at trial and may well be entitled to a jury charge on the exemption if warranted by the evidence. See Saavedra, 222 N.J. at 77.

On a final note, we reject as without merit defendant's argument that the State "did not question before the trial court, as it does now, whether [defendant] was still on his own premises when he was . . . arrested, as the court determined on two separate occasions," and thus should not be permitted to do so now. As the Supreme Court recently reiterated, a

14

prosecutor's concession of a point favorable to defendant in the trial court does not bind a reviewing court. Twiggs, __ N.J. at __ (slip op at 40); see also State v. Josey, 290 N.J. Super. 17, 32 (App. Div. 1996) (quoting Young v. United States, 315 U.S. 257, 258 (1942)) (noting "the proper administration of the criminal law cannot be left merely to the stipulation of parties").

The State did not instruct the grand jury initially on the home-carry exemption based on the prosecutor's belief the exemption was not applicable. See John Hogan, 336 N.J. Super. at 343 (holding "it is only when the facts known to the prosecutor clearly indicate or clearly establish the appropriateness of an instruction that the duty of the prosecution arises"); cf. State v. Reininger, 430 N.J. Super. 517, 531-32 (App. Div. 2013) (finding no interference with the grand jury's charging function by the prosecutor's having failed to instruct the grand jury on the federal exemption available under 18 U.S.C.A. 926A). After the trial court dismissed the count of the indictment charging defendant with unlawful possession of the pistol for failure to provide the instruction, the prosecutor included the instruction in re-presenting the charge to the grand jury. But as there is no evidence in the record of the grand jury proceeding or this record establishing

15

defendant was outside his residence on premises he either owned or possessed when he was arrested, the prosecutor's inclusion of an instruction on subsection (g) was clearly not error. Because the instruction provided to the grand jury on re-presentation of the case accurately explained the applicable law and was not misleading, there was no basis on which to dismiss the superseding indictment. See State v. Majewski, 450 N.J. Super. 353, 365 (App. Div. 2017).

Reversed and remanded for entry of an order reinstating the unlawful possession charge of the superseding indictment. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION